STATE OF IOWA ex rel. S. S. WRIGHT, Appellant, v. STATE BOARD OF HEALTH et al., Appellees.

No. 46325.

July 27, 1943.

S. S. Wright, of Des Moines, for appellant.

John M. Rankin, Attorney General, and Edward S. White, Jr., Assistant Attorney General, for appellees.

MULRONEY, C. J.—Plaintiff, S. S. Wright, the owner of a dwelling house located on the east seventy feet of Lot 6, Block 22, Corydon, Iowa, sought in this action a writ of mandamus to direct the defendants, the State Department of Health and Dr. Walter L. Bierring, Health Commissioner, to institute legal action to enjoin the Standard Oil Company of Indiana from storing gasoline on the west ninety feet of said Lot 6, and to compel said oil company to tear down and remove its oil service station located on said lot. Plaintiff alleged the maintenance of the service station and the storage of oil by the Standard Oil Company on Lot 6 constituted a violation of certain provisions of chapter 323, Code of 1939, known as the Housing Law. By amendment plaintiff stated Corydon was an incorporated town with no ordinances on housing imposing higher requirements than the minimum requirements laid down in chapter 323 of the 1939 Code.

The defendants moved to dismiss the petition on the ground that chapter 323, Code of 1939, is not applicable to Corydon. The motion to dismiss was sustained. Plaintiff stood on the

ruling and brought the case here alleging error in the trial court's ruling.

The only issue presented by the motion to dismiss and the trial court's ruling thereon is one of statutory interpretation. The first two sections of chapter 323 provide as follows:

"6327 This chapter shall be known as the housing law and shall apply to every city of the first class and cities under commission form of government which, by the last state or federal census, had a population of fifteen thousand or more, and to every city as its population shall reach fifteen thousand thereafter by any state or federal census.

"6328 In all other cities having a population of less than fifteen thousand, and in incorporated towns, the council may adopt ordinances for the regulation and control of any or all matters covered by the provisions of this chapter, insofar as same may be reasonably applicable, and fix penalties for the violation thereof; and fix rules and regulations not inconsistent with those provided in this chapter for the enforcement of said ordinances."

I. Plaintiff's entire argument hinges upon a construction of section 6328 and the interpretation of the word "may" in the portion providing "in incorporated towns, the council *may* adopt ordinances * * *." (Italics ours.) Plaintiff argues this *may* should be interpreted as *must* and that in the absence of ordinances in Corydon, the provisions of chapter 323 govern. Plaintiff then goes on from this premise and argues that the petition alleges the storage of gasoline on the same lot as a dwelling, in violation of section 6400; the erection and maintenance of the filling station on the lot without leaving a proper rear yard, in violation of section 6339; and the erection and maintenance of the filling station on the same lot without maintaining a proper open and unoccupied space between the buildings on the lot, in violation of section 6345.

An incorporated town, such as plaintiff describes Corydon in the petition, is, by paragraph 3 of section 5623, Code of 1939, defined to be a municipal corporation having a population of less than two thousand. The only place where incorporated towns are mentioned in the chapter is in section 6328. We can-

not construe this section as imposing upon such towns the requirements of the Housing Law. The legislative intent is quite clear. By section 6327 the provisions of the Housing Law are made to apply to every city of the first class and cities under the commission form of government with population now or hereafter of fifteen thousand, and in other cities of less than fifteen thousand and in incorporated towns the council may adopt housing ordinances regulating all or any matters covered by the Housing Law. The cities and towns of less than fifteen thousand receive merely a permissive grant of power to adopt housing ordinances. This is abundantly clear by reference to the title of the act as it was passed by the legislature, as chapter 123, Acts of the Thirty-eighth General Assembly. The title states:

"An Act in relation to the housing of the people in cities of the first class and special charter cities and cities under commission form of government * * * also providing that all other cities and incorporated towns may adopt ordinances for the regulation and control of any or all of such matters * * *."

It is true that the word "may" is, in the field of statutory construction, sometimes given the meaning of "must" or "shall." But it is also true that this meaning will never be ascribed to it unless it is necessary to give effect to the clear policy and intention of the legislature. Kelley v. City of Cedar Falls, 123 Iowa 660, 99 N. W. 556. In its ordinary meaning the word has a permissive use and confers discretion. In the role of "must" or "shall" it imposes a duty. Since its use in this statute is in connection with the adoption of ordinances involving the exercise of discretionary power, it is obvious the permissive or ordinary use was intended.

II. Plaintiff next argues that this construction of the Housing Law renders the law unconstitutional as being violative of section 6, Article I, and section 30, Article III, of the Constitution of Iowa, and section 1 of the Fourteenth Amendment to the Constitution of the United States. The argument is that, if the law does not apply to second-class cities and incorporated towns, then it is not a general law having uniform operation within the Iowa constitutional provisions, and it

denies to citizens in second-class cities and incorporated towns equal protection of the laws. Plaintiff's entire argument under the Iowa constitutional provisions is foreclosed by what we said in Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177; State v. Grefe, 139 Iowa 18, 117 N. W. 13; Tuttle v. Polk & Hubbell, 92 Iowa 433, 60 N. W. 733. A law is not offensively special in a constitutional sense because it does not operate upon all cities and towns in the state. A law is general if it operates upon all within a proper classification. Population can be a proper basis for classification if it bears a reasonable relation to the objects of the legislation.

The Housing Law is an exercise of the state police power. Burlington and Summit Apartments v. Manolato, 233 Iowa 15, 7 N. W. 2d 26. An examination of the provisions of the law shows the purpose to protect, by sanitary regulations, fire protection regulations, and other regulations, those who live in dwellings as therein defined in section 6329. Classification is primarily a question for the legislature, and, unless it appears to be arbitrary and capricious and without reference to the object of the legislation, courts will not disturb the legislature's classification. Here it seems quite obvious that the classification adopted by the legislature is reasonable. The problems of sanitation, fire hazard, poorly ventilated dwellings, and many other kindred problems that are present in large congested cities differ from the same problems in smaller cities. The squalor which the Housing Law is designed to eradicate is not much of a problem in a small community. We hold that the legislative classification is proper and therefore this valid exercise of the police power is not violative of the due-process clause of the Fourteenth Amendment to the United States Constitution. See Peverill v. Board of Supervisors, 208 Iowa 94, 222 N. W. 535, and cases there cited.

We have seen fit to examine the constitutionality of the Housing Law without reference to the opposite argument of counsel for defendant to the effect that plaintiff has no right to raise the issue. We recognize the duty of courts whenever possible to construe an act of the legislature in such a way as to preserve its constitutionality. We do not, however, hold that

one against whom an act is not being imposed can raise its constitutionality. After all, if we held the act unconstitutional, it would leave plaintiff's position unchanged.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.