Howard BENNETT, Appellee,

v.

CITY OF REDFIELD, Iowa, Appellant.

No. 88–1073.

Supreme Court of Iowa.

Sept. 20, 1989.

David J. Welu and Constance C. Welu of Welu & Welu, Redfield, for appellant.

Thomas Mann, Jr., of Mann & Mann, Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

Howard Bennett was employed by the City of Redfield for approximately twenty-five years. On September 3, 1985, the City took action at a regular council meeting to terminate his employment as street superintendent. A written notice of termination was filed with the city clerk and a copy mailed to Bennett informing him of the reasons for termination effective September 20, 1985. The notice listed the following reasons for his discharge: (1) failure to follow orders, (2) inattention to duties, (3) reduction and consolidation of city employment positions, (4) misuse of city time. On September 18, Bennett requested a public hearing upon his discharge.

The public hearing was held on October 17, 1985. Bennett and his attorney appeared before the city council at the special council meeting. The city mayor stated the purpose for the special council meeting and the reasons for Bennett's discharge. Bennett and his attorney were given the floor to respond to the issues concerning the discharge. Bennett, his attorney, members of the council, and others attending the

meeting made comments and expressed their opinions. A motion to rehire Bennett as street superintendent was defeated. Bennett refused the City's offer of part-time employment.

On March 3, 1986, Bennett filed suit in Iowa district court. In his 42 U.S.C. section 1983 claim, Bennett alleged his civil rights had been violated by the manner in which the City had discharged him and conducted the public hearing. He claimed he was deprived of his property and his liberty without due process. In a separate count, he alleged the City wrongfully discharged him in violation of public policy. The City denied the allegations and asserted that Bennett was an employee at will who had no constitutional right to due process upon his employment termination. The City alleged it had complied with the notice and hearing requirements of Iowa Code section 372.15 (1987).

Both parties filed motions for summary judgment urging there were no material disputed facts. On September 18, 1987, Judge Brown granted summary judgment to the City upon Bennett's property interest due process claim and his wrongful discharge claim. The court denied summary judgment to the City upon Bennett's liberty interest due process claim. The court denied Bennett's motion for summary judgment and his motion to amend.

The case was tried to a jury upon Bennett's liberty interest due process claim. The jury returned a $65,000 verdict for Bennett. Judge Keller entered judgment upon the verdict. The court denied Bennett's application for attorney fees. The City appealed from the judgment and post-trial rulings of the court. Bennett filed a cross-appeal on the court's failure to grant his motions for summary judgment, amendment, attorney fees, and other trial motions.

I. The City's Appeal.

At the close of Bennett's evidence at trial, the City moved for a directed verdict. The City claimed Bennett had failed to offer substantial evidence to support each of the elements of his liberty interest due process claim. It urged that Bennett's own evidence established that a name clearing hearing had been provided by the City and thus Bennett had failed to prove his request for a hearing had been denied. The City cited the case of *Campbell v. Pierce County,* 741 F.2d 1342 (11th Cir.1984), as authority. The City renewed its motion for a directed verdict at the close of all evidence. The motion was again denied. After the jury returned with its verdict for Bennett, the City filed a motion for judgment notwithstanding the verdict under Iowa Rule of Civil Procedure 243. The City appealed from the trial court's denial of this motion and its entry of a judgment upon the jury verdict.

We must determine whether there was substantial evidence to support each element of Bennett's claim. If there was not, the motion for judgment notwithstanding the verdict, urged upon the same grounds as the motion for directed verdict, should have been granted. *Lala v. Peoples Bank & Trust Co.,* 420 N.W.2d 804, 806 (Iowa 1988). If there was substantial evidence to support each element of the claim, then the court properly denied the motion.

### Liberty Interest Due Process Claim.

■ To prevail upon his section 1983 claim, Bennett must establish (1) a deprivation of a right secured by the Constitution, and (2) the deprivation of that right by persons "acting under color of state law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142, 150 (1970). Bennett claims the City deprived him of his constitutional right of liberty guaranteed by the Fourteenth Amendment. While "liberty" is most clearly deprived when a state takes an individual into custody, the state also may deprive a person of his or her liberty by damaging the person's reputation so severely that associational or employment opportunities are impaired or foreclosed. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558–59 (1972); 4 E. McQuillin, *The Law of Municipal Corporations 3d,* sec. 12.260, p. 503 (1985).

This may occur when a city discharges a public employee. *See, e.g., Anderson v. Low Rent Hous. Comm'n,* 304 N.W.2d 239, 243 (Iowa 1981).

■ To establish a liberty interest due process claim, the claimant must prove that the employer published[1] false[2], stigmatizing[3] charges in connection with the discharge[4] which were denied by the claimant[5] and which seriously damaged the claimant's employment opportunities or standing and associations in the community,[6] all without notice and opportunity to be heard in a name clearing hearing[7] requested[8] by the claimant.

■ Therefore, if the claimant has been afforded notice and opportunity to be heard in a name clearing hearing, no liberty interest claim arises. As stated in *Nelson v. City of McGehee,* 876 F.2d 56, 58 (8th Cir.1989), "[i]t is the denial of due process, not the alleged defamation *per se,* which triggers a federal cause of action." The due process requirement is satisfied where the employee is notified of the reasons for discharge and furnished the opportunity of a name clearing hearing. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59. Where a property interest in public employment is at issue, a pretermination hearing is required. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1983). However, where an employee's liberty interest is at issue, a post-termination hearing is sufficient. As expressed by the Supreme Court:

> [L]iberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee. Since the purpose of the hearing in such a case is to provide the person "an opportunity to clear his name," a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause.

*Arnett v. Kennedy,* 416 U.S. 134, 157, 94 S.Ct. 1633, 1646, 40 L.Ed.2d 15, 35 (1974).

■ If a name clearing hearing is requested, even a special purpose hearing before the governing body that discharged the employee may satisfy due process requirements. *See Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir.1989); *Campbell v. Pierce County,* 741 F.2d 1342, 1345–46 (11th Cir.1984). Due process requires only that the claimant be accorded notice of the charges and opportunity to present arguments and evidence at a public forum. *See Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503–04; *Wellner v. Minnesota State Junior College Bd.,* 487 F.2d 153, 156–57 (8th Cir. 1973).

■ On our review of the record, we find the City notified Bennett of the reasons for

---

1. *Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684, 692 (1976). *See also Hogue v. Clinton,* 791 F.2d 1318, 1322 (8th Cir.1986); *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984).

2. *Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882, 884, 51 L.Ed.2d 92, 96–97 (1977); *Hogue,* 791 F.2d at 1323; *Sims v. Fox,* 505 F.2d 857, 863–64 (5th Cir.1974).

3. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed. 548, 558–59 (1972). *See also Nathanson v. United States,* 630 F.2d 1260, 1264–65 (8th Cir.1980); *Ventetuolo v. Burke,* 596 F.2d 476, 484 (1st Cir.1979).

4. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405, 414 (1976); *Moore v. Otero,* 557 F.2d 435, 438 (5th Cir.1977); *Roth v. Reagen,* 422 N.W.2d 464, 467–68 (Iowa 1988).

5. *Codd,* 429 U.S. at 627–28, 97 S.Ct. at 884, 51 L.Ed.2d at 96–97; *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982).

6. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59; *Evans v. City of Dallas,* 861 F.2d 846, 851–52 (5th Cir.1988); *Perry v. F.B.I.,* 781 F.2d 1294, 1302 (7th Cir.1986); *Mazaleski v. Treusdell,* 562 F.2d 701, 713–15 (D.C.Cir.1977); *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366 (9th Cir.1976).

7. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59 (1972). *See also In re Selcraig,* 705 F.2d 789, 796–97 (5th Cir.1983).

8. *Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir.1989); *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984).

his removal in accordance with Iowa Code section 372.15. A public hearing was held within thirty days of Bennett's request for a hearing. At the hearing, Bennett and his attorney, Linda Pettit, responded to the reasons given for his discharge. They offered petitions signed by persons in the community. Pettit testified they brought out everything that Bennett had to say at that hearing. Bennett had no disagreement with her testimony. Bennett did not present substantial evidence that he was denied an opportunity to be heard in a name clearing hearing. Therefore, the district court erred in denying the City's motion for judgment notwithstanding the verdict.

■ In addition, Bennett failed to present substantial evidence on another element of his claim. He did not produce substantial evidence that the City gave stigmatizing reasons for his dismissal. To violate the constitutionally protected liberty interest, the accusations must be of grave consequence. *Anderson v. Low Rent Housing Comm'n*, 304 N.W.2d at 244. They must involve allegations of dishonest, immoral, or illegal conduct that call into question the terminated employee's honesty, reputation, or good name. *Id.*

It is undisputed on appeal that the first three reasons given by the City for discharging Bennett were not stigmatizing in nature. However, even a charge of "misuse of city time" does not stigmatize an individual unless other circumstances show that dishonest, immoral, or illegal conduct is implied in the allegation. Bennett failed to produce such other evidence. A charge of "misuse of city time" may imply that the employee, through no character fault of the employee, failed to establish priorities or to use city time efficiently. *See, e.g., Nathanson v. United States*, 630 F.2d 1260, 1264–65 (8th Cir.1980) (charge of failure to follow procedures not stigmatizing); *Ventetuolo v. Burke*, 596 F.2d 476, 484 (1st Cir.1979) (charge of insubordination not stigmatizing); *Mazaleski v. Treusdell*, 562 F.2d 701, 712 (D.C.Cir.1977) (charge of substandard performance not stigmatizing); *Russell v. Hodges*, 470 F.2d 212, 215, 217

(2d Cir.1972) (charge of sleeping on duty not stigmatizing).

## II.   Bennett's Cross–Appeal.

Bennett filed a cross-appeal. He urged the district court erred in granting the City's motion for summary judgment upon his property interest due process claim and his wrongful discharge claim. We must determine if the City has established there was no genuine issue as to any material fact and that it was entitled to a judgment as a matter of law. Iowa R.Civ.P. 237(c).

*Property Interest Due Process Claim.*

■ No state shall deprive any person of property without due process of law. *See* U.S. Const. amend. XIV, sec. 1. In *Board of Regents v. Roth*, the United States Supreme Court recognized that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). In the context of public employee discharges, the Court looks to state law to determine whether a public employee has a property interest in continued employment. *See, e.g., Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976). If a property interest in continued employment exists, then the employee is entitled to a pretermination hearing that comports with the requirements of due process. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1983); Note, *Due Process Refocused: Implications for Public Employment in Iowa*, 62 Iowa L.Rev. 1489, 1522 (1977). If no property interest exists, then the employee must rely on any procedural protections afforded by contract, ordinance, or state statute.

■ The civil service law, Iowa Code chapter 400, which creates a property interest in continued employment, generally does not apply to cities having a population of 15,000 persons or less. Iowa Code

§ 400.6. It is undisputed in the record that the civil service law did not apply to Bennett's employment. Bennett had no contract of employment for a definite term.

Bennett argues that Iowa Code section 372.15 creates a property interest in continued employment under state law by guaranteeing that he would not be discharged without just cause. This section provides:

> Except as otherwise provided by state or city law, all persons appointed to city office may be removed by the officer or body making the appointment, but every such removal shall be by written order. The order shall give the reasons, be filed in the office of the city clerk, and a copy shall be sent by certified mail to the person removed who, upon request filed with the clerk within thirty days of the date of mailing the copy, shall be granted a public hearing before the council on all issues connected with the removal. The hearing shall be held within thirty days of the date the request is filed, unless the person removed requests a later date.

In *Scott v. City of Waterloo*, 190 Iowa 467, 180 N.W. 156 (1920), we discussed Iowa Code section 657 (Supp.1913), the predecessor to section 372.15. We held that the statute does not require that removal shall be for cause. *Scott*, 190 Iowa at 469–70, 180 N.W. at 157. We find no reason to alter the standard articulated in *Scott*. Bennett did not have a property interest in continued employment under state law. *See, e.g., McBride v. City of Sioux City*, 444 N.W.2d 85 (Iowa 1989).

*Equal Protection.*

Bennett argues that since the district court's construction of section 372.15 creates different standards for termination of municipal employees based on the size of the city, the resulting classification denies him equal protection of the law. We first decide whether the equal protection issue is to be decided under traditional rational basis analysis or under the more stringent strict scrutiny analysis. We apply a rational basis analysis except when a classification is suspect or involves fundamental rights. *Rudolph v. Iowa Methodist Medi-*

*cal Center*, 293 N.W.2d 550, 557 (Iowa 1980). In those cases, the statute will survive a constitutional challenge only if it is shown that the statute is necessary to serve a compelling state interest. *Kramer v. Union Free School Dist.*, 395 U.S. 621, 626–27, 89 S.Ct. 1886, 1889–90, 23 L.Ed.2d 583, 589 (1969).

Suspect classifications generally are based on race, alienage, or national origin. *State v. Martin*, 383 N.W.2d 556, 559 (Iowa 1986). Fundamental rights include the right to vote, the right of interstate travel, and other rights, such as those guaranteed by the First Amendment, which are considered essential to individual liberty. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520, 524 (1976). The right to public employment is not a fundamental right. *Id.* Beyond this, Bennett argues his fundamental right to travel is involved because the procedural protections afforded municipal employees depend on where they live, citing *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

*Shapiro* involved a durational residency requirement for receiving subsistence welfare benefits which was invalidated as an infringement of the right to travel. We fail to see how Bennett's right to travel has been implicated. The procedural protections to which he is entitled depend upon whether he is employed by a city of more than 15,000 persons, and not upon whether he lives in such a city.

Since no other fundamental rights have been asserted, we next determine whether the legislature has employed a suspect class. The legislature's method of classification generally denies municipal employees of cities of 15,000 persons or less the protection of the civil service law. Employees of city governments do not comprise a suspect class. *See Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566, 49 L.Ed.2d at 524. Neither is population a suspect method of classification. We have upheld statutory classifications based on population under the rational basis analysis. *See State*

*ex rel. Wright v. State Bd. of Health*, 233 Iowa 872, 10 N.W.2d 561 (1943); *State ex rel. Welsh v. Darling*, 216 Iowa 553, 246 N.W. 390, 88 A.L.R. 218 (1933). We reject Bennett's argument that strict scrutiny be applied.

Under the rational basis analysis, a statute is constitutional unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973); *Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978). The statute has the presumption of constitutionality. *Hawkins*, 264 N.W.2d at 729. The burden is on the attacker to prove beyond a reasonable doubt that the statute violates equal protection concepts. *Id.* Bennett must show that there is no reasonable basis for the classification in the statute. *Id.*

In *State ex rel. Wright*, we upheld against an equal protection challenge a legislative classification making the housing law applicable to cities with a population of 15,000 or more. We recognized that the problems which the housing law was designed to address were not as great in smaller communities. *State ex rel. Wright*, 233 Iowa at 876, 10 N.W.2d at 563–64.

The legislature's classification based on population is similarly justifiable in this instance. The legislature could rationally conclude that the burden of implementing a civil service system would fall disproportionately upon smaller communities. *See, e.g.*, 1982 Op.Iowa Att'y Gen. 283, 284. We hold that the legislature's classification on the basis of population contained in the civil service law is reasonable.

*Privileges and Immunities.*

Bennett argues section 372.15 violates the privileges and immunities clause of section 6, article 1 of the Iowa Constitution if it does not provide him with a property interest in continued employment. We have held that "[o]ne who challenges the statute on this constitutional ground must negate every conceivable basis which may support the classification, and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest." *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.*, 255 N.W.2d 89, 95 (Iowa 1977). To offend the Iowa Constitution, the classification must be without a reasonable basis in fact, purely arbitrary and capricious. *Koch v. Kostichek*, 409 N.W.2d 680, 684 (Iowa 1987). Bennett did not carry his burden to show section 372.15 lacks a rational relationship to a legitimate state interest.

*Wrongful Discharge.*

Bennett asserts that he was wrongfully discharged in violation of public policy. He cites chapter 400 of the Iowa Code as an expression of public policy favoring progressive discipline procedures and termination of employment only for good cause. We recognize that a discharged employee may maintain a cause of action when the discharge serves to frustrate a well-recognized and defined policy of the state. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988). The employer's action must offend a clearly articulated public policy of this state to be actionable. *Id.* at 559. The City has not violated any clearly articulated public policy of the state. The legislature clearly intended that the provisions of chapter 400 generally should not apply to cities of 15,000 persons or less. The court correctly granted summary judgment upon Bennett's property interest due process claim and his wrongful discharge claim.

III. Motion to Amend.

Bennett filed a motion to amend his petition after his right to amend had expired under Iowa Rule of Civil Procedure 88. The proposed amendment alleged an action of libel, slander and defamation of character against the City. Bennett filed a cross-appeal from the court's denial of his motion to amend.

We accord considerable discretion to the trial court ruling upon Rule 88 motions. We reverse only when a clear

abuse of discretion has been shown. *Ackerman v. Lauver*, 242 N.W.2d 342, 345 (Iowa 1976). The discretion allowed the court is a legal discretion to be exercised by applying the rule in light of all the circumstances of the case. *Johnston v. Percy Constr., Inc.*, 258 N.W.2d 366, 371 (Iowa 1977). Here, the motion was filed approximately sixteen months after the suit was commenced. It was filed approximately twenty days before the date set for trial and after the amendment deadline set by the court in a scheduling order. The court had ordered a scheduling conference be held approximately one year after the suit was commenced. With the written approval of both parties, in April of 1987, the court entered an order setting trial for August 10 and directing all amendments to the pleadings be filed by July 10. The proposed amendment would have substantially changed the issues of the suit. The court did not abuse its discretion in denying the motion to amend because it was untimely.

IV. Disposition.

We affirm the district court's summary judgments for the City and its ruling on Bennett's motion to amend. We reverse the district court's ruling on the motion for judgment notwithstanding the verdict and dismiss Bennett's petition.

AFFIRMED IN PART, REVERSED IN PART.